IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| HIGH PLAINS CONSTRUCTION, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>PAUL GAY, ROB ROLLINS, and AEROSTAR, INC.,<br><br>    Defendants. | No. 4:11-cv-00245 – JEG<br><br>**O R D E R** |

Now before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the alternative, for Transfer of Venue filed by Defendants Paul Gay (Gay), Rob Rollins (Rollins), and Aerostar, Inc. (Aerostar), (collectively, Defendants).  Plaintiff High Plains Construction, Inc. (Plaintiff or High Plains), resists.  The Court held a hearing on the motion on November 10, 2011.  Attorney David Alan Morse appeared on behalf of High Plains, and attorney Joseph A. Cacciatore represented Defendants.  At the hearing, the Court granted High Plains leave to file supplemental briefing, which it timely provided.  The matter is now complete and ready for disposition.

**I.    BACKGROUND**[1]

On March 10, 2009, High Plains, an Iowa corporation, entered into a written dealership agreement (Dealership Agreement) with Aerostar, a corporation that manufactures, among other things, wind turbines and is organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in Westport Point, Massachusetts.  Under this Dealership Agreement, High Plains was authorized as an independent contractor to sell, install, and maintain

---

[1] "Because this case arises from a motion to dismiss, [the Court] accept[s] as true the factual allegations in [plaintiff's] complaint."  <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2079 (2011).

certain Aerostar wind turbines. The Dealership Agreement governing the relationship of the parties provides, in relevant part as follows:

> GOVERNING LAW – JURISDICTION. This agreement shall be governed by, construed and interpreted according to the laws of the Commonwealth of Massachusetts. Any dispute arising under or in connection with this agreement or related to any matter which is the subject of this agreement shall be subject to the exclusive jurisdiction of the state and/or federal courts located in Massachusetts.

Dealership Agreement 5, Ex. A to Defs.' Br., ECF No. 7-1.

High Plains, as an authorized dealer, benefitted from a lower "dealer price" in its purchase of Aerostar's turbines and associated equipment. During the course of the parties' relationship, High Plains ordered, and received, a number of wind turbines from Aerostar. In December of 2009, High Plains ordered ten additional 30 KW turbine units from Aerostar for $47,960 per unit and timely tendered the requisite $317,000 down payment. Aerostar accepted the order and repeatedly affirmed its intention to deliver the requested units in the spring and summer of 2010. Reporting design and manufacturing issues, Aerostar postponed delivery, promising shipment by the end of 2010. To date, Aerostar has yet to deliver the ten turbines and has refused to refund High Plains its down payment.

Gay and Rollins, both residents of Massachusetts, were acting, at all times relevant to this dispute, as authorized agents of Aerostar. Gay is both the vice president of engineering and general counsel to Aerostar; Rollins is the vice president of sales and operations for Aerostar. On April 18, 2011, at the invitation of High Plains, Gay and Rollins visited a number of High Plains' customers in Iowa who were expecting the delivery of Aerostar turbines. High Plains alleges that during those visits, while in full knowledge of the existing contractual relationship between Plaintiff and these customers, Gay and Rollins made false, defamatory, and slanderous statements about High Plains in regard to its turbine projects. High Plains contends that these false

2

statements, in connection with their attempts to solicit said customers to buy directly from Aerostar, constitute an intentional interference with a contractual relationship.

On April 29, 2011, Plaintiff filed its petition in the Iowa District Court for Polk County alleging tortious interference with a business contract against Defendants, breach of contract against Aerostar, and requesting injunctive relief enjoining Defendants from contacting Plaintiff's customers. Defendants removed the case to this Court on May 26, 2011, based on diversity jurisdiction. In May of 2011, Aerostar, pursuant to the forum selection clause contained in the Dealership Agreement, brought suit against Plaintiff in Massachusetts alleging breach of contract, misrepresentation, unfair and deceptive trade practices, negligence, breach of covenant of good faith and fair dealing, and fraud and deceit, and requesting injunctive relief.

On July 1, 2011, Defendants filed the motion now before the Court.

## II. DISCUSSION

### A. Rule 12(b)(2)-Lack of Personal Jurisdiction

#### 1. Due Process

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant[s] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation marks and citation omitted). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotation marks and citation omitted). "[The court]

must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." K-V Pharm. Co., 648 F.3d at 592.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-472 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever, 380 F.3d at 1073 (quoting Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991)). When, as Iowa's long-arm statute provides, a state's personal jurisdiction is as broad as is consistent with due process, the Court need only consider whether the exercise of personal jurisdiction comports with the Due Process Clause. See Wells Dairy, 607 F.3d at 518.

To conform with constitutional requirements, there must exist "minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Id. (alteration in original) (internal quotation marks and citations omitted). This requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

To determine that personal jurisdiction conforms with this standard, the Eighth Circuit Court of Appeals has instructed courts to consider five factors:

4

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983) (internal quotation marks and citation omitted). Of these factors, the first three factors are of primary importance. Id. The Eighth Circuit Court of Appeals has determined that the third factor "distinguish[es] between specific and general jurisdiction." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996) (citations omitted). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Id. at 1103 (internal quotation marks and citation omitted).

It is apparent from the record before the Court that Aerostar is not subject to this Court's general jurisdiction. Aerostar has not maintained the requisite continuous and systematic contacts as the company is not incorporated in Iowa, does not maintain an office or keep employees in Iowa, and has no registered agent in Iowa. See Wells Dairy, 607 F.3d at 519 (finding insufficient contacts for general jurisdiction when "the company is not licensed to do business in Iowa, it does not maintain employees or a registered agent there, it does not own or lease property in Iowa, and its employees have not traveled to Iowa to conduct [defendant's] business"). The record further reflects that Gay and Rollins, who are sued not individually but in their capacity as representatives of Aerostar, are not subject to this Court's general jurisdiction as neither Gay nor Rollins maintain sufficient continuous and systematic contacts with Iowa. Instead, their contact with Iowa consists entirely of a solitary visit to the state made on behalf of Aerostar at the behest of High Plains. See Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011)

(holding that a single contact with a state during a business trip did not establish personal jurisdiction for that state over the defendants).

However, "meaningful events in the parties' business relationship occurred in Iowa," which supports this Court's specific jurisdiction. Wells Dairy, 607 F.3d at 519. Aerostar knowingly entered into the Dealership Agreement with High Plains, which is an Iowa corporation. Under that agreement, High Plains entered into contracts with third parties in Iowa to sell goods manufactured by Aerostar. Aerostar monitored High Plains' compliance with the Dealership Agreement by sending Gay and Rollins to Iowa to meet with third parties purchasing its products through High Plains. All of the acts giving rise to High Plains' claim of tortious interference with contractual relationships occurred within the state of Iowa. Furthermore, Iowa has an interest in protecting its citizens in their contractual and business affairs. See, e.g., Berkley Int'l Co., Ltd. v. Devine, 289 N.W.2d 600, 605 (Iowa 1980) ("[T]he state of Iowa has a strong interest in protecting Iowa residents from damage as a result of tortious actions and breach of contractual duties by nonresident defendants."); Roquette Am., Inc. v. Gerber, 651 N.W.2d 896, 903 (Iowa Ct. App. 2002) (holding that "Iowa has an interest in resolving the disputes of its corporate citizens."). The above considerations demonstrate sufficient contacts between Aerostar and High Plains to satisfy due process requirements.

The above consideration also supports the Court's right to exercise specific jurisdiction over Gay and Rollins. While Gay and Rollins came to Iowa in their capacity as representatives of Aerostar, they allegedly were directly engaged in the activities giving rise to High Plains' claim of tortious interference with its contractual relationships. High Plains claims that Gay and Rollins, while in Iowa, made false and slanderous statements to persons with whom High Plains had entered into contract. These activities, which exceed mere monitoring of High Plains' compliance with the contract, constitute sufficient contacts with Iowa to grant personal jurisdiction to this Court with respect to the subject of this lawsuit. See State ex rel. Miller v. Grodzinsky, 571

N.W.2d 1, 4 (Iowa 1997) (holding that an "agent is still subject to personal jurisdiction of the court if the agent is a 'primary participant[] in an alleged wrongdoing intentionally directed at [forum-state] resident[s], and jurisdiction over [him] is proper on that basis'" (alterations in the original) (quoting Calder v. Jones, 465 U.S. 783, 790 (1984)). Cf. Pangaea, 647 F.3d at 749 (affirming the district court's finding that the state lacked personal jurisdiction over the defendants when they visited the state only once in an official capacity, and none of the events giving rise to the claim occurred in that state).[2]

## 2. Forum Selection Clause

Defendants' sole dispute of personal jurisdiction is premised upon the forum selection clause contained in the Dealership Agreement, which they contend precludes the Court from exercising personal jurisdiction over Defendants regarding issues arising from the contract. This Court has previously acknowledged "that parties to a contract may agree in advance to submit to the jurisdiction of a given court." Wells Fargo Fin. Leasing, Inc. v. NCH Healthcare Sys., Inc., 756 F. Supp. 2d 1086, 1092 (S.D. Iowa 2010) (quoting EFCO Corp. v. Norman Highway Con-

---

[2] In their reply, Defendants alleged that Gay and Rollins were not subject to personal jurisdiction in the state of Iowa under the fiduciary shield doctrine. At the hearing, the Court granted Plaintiff's request for leave to file supplemental briefing in response to Defendants' claim. Under the fiduciary shield doctrine, which has been adopted by the Iowa Supreme Court, "a nonresident corporate agent is not individually subject to a court's jurisdiction on the basis of jurisdiction of the corporation itself." State ex rel. Miller v. Internal Energy Mgmt. Corp., 324 N.W.2d 707, 711 (Iowa 1982). Therefore, Gay and Rollins would not be subject to this Court's personal jurisdiction if their "only contact with the state is by virtue of [their] acts as [] fiduciar[ies] of the corporation." Whalen v. Connelly, 545 N.W.2d 284, 295 (Iowa 1996). Personal jurisdiction is proper, however, when the agents are "primary participants in an alleged wrongdoing intentionally directed at [an Iowa] resident." Calder v. Jones, 465 U.S. 783, 790 (1984). The Court is not persuaded that the alleged tortious acts of Gay and Rollins fall within the conduct protected by the fiduciary shield doctrine. See State ex rel. Miller v. Grodzinsky, 571 N.W.2d 1, 6 (Iowa 1997) ("A corporate shield does not insulate a nonresident defendant from jurisdiction of an Iowa court for personal acts causing injury to residents of Iowa."). Furthermore, even if the Court had found that the fiduciary shield doctrine applied, the Court would, nonetheless, transfer the case in the interest of justice under 28 U.S.C. § 1406(a). See infra note 3.

structors, Inc., 606 N.W.2d 297, 299 (Iowa 2000)); see also Burger King, 471 U.S. at 472 n.14 ("[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction."). Accordingly, parties can waive their right to challenge personal jurisdiction by agreeing to submit their contract to the governance of a certain court. See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc., 270 F.3d 621, 624 (8th Cir. 2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." (internal quotation marks and citations omitted)). However, while a forum selection clause serves to waive any challenge to personal jurisdiction in those jurisdictions named in the contract, it does not "eliminate *another* state's ability to exercise personal jurisdiction over a party to [] such a contract." Brown v. Kerkhoff, 504 F. Supp. 2d 464, 502 n.28 (S.D. Iowa 2007).

Instead, a party's means of enforcing a forum selection clause has been addressed by courts as a concern of venue. See, e.g., InCompass IT, Inc. v. XO Commc'ns Servs., Inc., Civ. No. 11-570 (PAM/TNL), 2011 WL 2037603, at *2 (D. Minn. May 24, 2011) ("[T]he [Supreme] Court determined that a federal court sitting in diversity jurisdiction should treat a request to enforce a forum-selection clause as a motion to transfer venue under 28 U.S.C. § 1404(a)." (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).[3] Since the Court has personal jurisdiction

---

[3] Some cases appear to stand for the proposition that if a court finds a forum selection clause mandatory *and* finds that the clause mandates that the dispute be heard in another state or court, then the court would need to find that it lacked personal jurisdiction. See, e.g., Rosemann v. Sigillito, No. 10-CV-1165-LRR, 2010 WL 3724351, at *4 (E.D. Mo. Sept. 16, 2010) ("In the United States, [a] general maxim in interpreting forum-selection clauses is that an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." (alteration in original) (internal quotation marks and citation omitted)); DataCard Corp. v. Softek, Inc., 645 F. Supp. 2d 722, 729 (D. Minn. 2007) ("Mandatory forum-selection clauses require a case to be brought in an identified venue based on specific language indicating the parties' intent to make jurisdiction exclusive. Permissive forum-selection clauses, on the other hand, constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." (internal quotation marks and citations omitted)). But see InCompass IT, 2011 WL

8

under the Due Process Clause, the Court will consider the effect of the forum selection clause under Defendants' venue challenge.

**B. Rule 12(b)(3)-Improper Venue**

Defendants challenge venue based upon the forum selection clause. When, as here, a case has been removed, venue is governed by 28 U.S.C. § 1441(a). See St. Clair v. Spigarelli, 348 F. App'x 190, 191 (8th Cir. 2009) (unpublished per curiam) ("Title 28 U.S.C. § 1441(a) governs the venue of removed actions . . . ." (internal citations omitted)). Under § 1441(a), venue is proper for a removed action in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); see also Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 666 (1953) (applying 28 U.S.C. § 1441(a)). Since Defendants properly removed the cause of action, the forum selection clause does not defeat the Court's statutorily proper venue. Cf. Lyngholm v. FedEx Ground Package Systems, Inc., __ F. Supp. 2d __, 2011 WL 6072220, at *7 n.1 (S.D. Iowa Mar. 1, 2011) (discussing the right of a defendant added post-removal to challenge venue under Rule 12(b)(3) while noting that the removing defendant could not raise the same challenge).

---

2037603, at *2 (noting that the Court in Stewart applied § 1404(a) despite the forum selection clause containing mandatory, instead of permissive, language).

      Even if the Court were to find that it lacked personal jurisdiction, some courts have concluded that a case can still be transferred to another venue, but the analysis would be under 28 U.S.C. § 1406(a). See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); Mayo Clinic v. Kaiser, 383 F.2d 653, 654 (8th Cir. 1967) ("[Section] 1406(a) should be construed wherever possible to remove procedural obstacles which would prevent an expeditious and orderly adjudication of a case on its merits."); Cosmetic Warriors Ltd. v. Abrahamson, 723 F. Supp. 2d 1102, 1104 n.3 (D. Minn. 2010) ("[T]he Court may transfer this action regardless of whether venue is proper in this district or whether it enjoys personal jurisdiction over the moving Defendants." (citing 28 U.S.C. § 1406(a))). Were the Court to consider the motion under Section 1406(a), the Court would still grant the transfer of venue in the interest of justice.

9

### C. 28 U.S.C. § 1404(a) - Transfer Venue

While heavily relying on the forum selection clause, Defendants request that the Court transfer this case for the sake of efficiency, due to the pendency of state court litigation between the parties in Massachusetts. Plaintiff resists the invocation of the forum selection clause, insisting that its tort claims fall outside of the clause's breadth. Plaintiff further notes that the witnesses to the alleged tortious interference with contractual relationships reside in Iowa, the alleged acts themselves took place in Iowa, and the contracts entered into between Plaintiff and these third parties were formed in Iowa. Based upon these considerations, Plaintiff argues that Iowa provides the proper venue.

In determining the propriety of a requested transfer under § 1404(a), the Court must consider "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart, 487 U.S. at 29. "The presence of a forum-selection clause" will figure "centrally in the district court's calculus." Id. The Eighth Circuit Court of Appeals has established that "the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, 119 F.3d at 695. When a forum selection clause is included, however, courts have focused on the separate burden on the party seeking to avoid the freely contractually chosen venue. Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995) ("Where the forum selection clause is valid . . . the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."); In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("[W]hen a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of

10

the dispute."). But see Terra Int'l, 119 F.3d at 696 (declining to consider whether or not a forum selection clause shifts the burden of proof to the party resisting the clause's enforcement).

Before addressing the § 1404(a) factors, the Court must first consider if Plaintiff's claims fall outside of the forum selection clause. "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." Terra Int'l, 119 F.3d at 693 (quoting Berrett v. Life Ins. Co. of the Sw., 623 F. Supp. 946, 948-49 (D. Utah 1985)).

In Terra International, Inc. v. Mississippi Chemical Corp., the court found the forum selection clause, which in relevant part stated, "disputes arising between the parties hereunder . . . will be determined in the District Court of the United States for the Southern District of Mississippi," was ambiguous and, in construing the clause, concluded that the clause applied only to claims arising under the parties' license agreement. Id. at 692. The Terra court noted that, while sister circuits have concluded contrarily when considering similarly-worded forum selection clauses, "the majority of th[ose] cases suggest[] that such clauses do apply to tort claims." Id. at 693. The court reviewed the licensing agreement and determined that it anticipated that "future claims of defective design may arise between the parties," and, therefore, the plaintiff's product liability tort claim did arise under the agreement. Id. at 695.

In this case, the forum selection clause contained in the Dealership Agreement prescribes that it governs "[a]ny dispute arising under or in connection with this agreement or related to any matter which is the subject of this agreement." Dealership Agreement 5, Ex. A to Defs.' Br., ECF No. 7-1. The forum selection clause's language "arising under or in connection with this agreement" clearly encompasses Plaintiff's tortious interference with contractual relationships claim. Terra Int'l, 119 F.3d at 692-93 (interpreting "arising between the parties hereunder" to include both contractual and tort claims). Unlike the court in Terra Int'l, the Court finds no

11

ambiguity in the meaning of the forum selection clause, making enforcement of the forum selection clause even more compelling.[4]

While Plaintiff paints its involvement with the third-party purchasers as being a polarized contractual arrangement, the record reflects that Plaintiff entered into these agreements in order to install the wind turbines it purchased from Aerostar. This clearly is "related to" the contract with Defendants. See id. (holding "[w]hereas [p]laintiff's claims relate closely to her agreements with [defendant], the [c]ourt will not exclude them from the [forum selection] Clause's scope"). Furthermore, Gay and Rollins' presence in Iowa was a follow-up visit, made pursuant to High Plains' invitation, to evaluate the measures taken by High Plains in furtherance of installing said wind turbines. Any alleged comments made during those visits directly pertain to the contractual relationship that existed between High Plains and the Defendants at that time.

Even if this Court were to find that the forum selection clause did not clearly establish its governance over Plaintiff's tort claims, the Court would be required to determine the scope of the clause, inevitably leading to the same result. The Eighth Circuit Court of Appeals has adopted three tests employed by other circuits to determine whether tort claims are subject to a contractual forum selection clause. Terra Int'l, 119 F.3d at 694-95. Courts are to consider "1) whether the tort claims 'ultimately depend on the existence of a contractual relationship between the parties;' 2) whether resolution of the claims 'relates to interpretation of the contract;' and 3) whether the claims 'involve the same operative facts as a parallel claim for breach of contract.'" Beckley v. Auto Profit Masters, L.L.C., 266 F. Supp. 2d 1001, 1005 (S.D. Iowa 2003) (quoting Terra Int'l, 119 F.3d at 694-95).

---

[4] See Hodnett v. Heartland Res., Inc., Civ. No. 07-2092, 2007 WL 3500053, at *5 (W.D. Ark. Nov. 14, 2007) (finding the forum selection clause "unqualified in its inclusion of matters in dispute between the parties," and concluding that "the facts of the instant case dictate transfer more strongly than the facts" in Terra).

As argued by the Defendants, the alleged intentional interference claims are directly reliant upon the existence of a contractual relationship between the parties. Gay and Rollins came to Iowa solely because of the contractual agreement with High Plains. Furthermore, Plaintiff alleges that Defendants' acts were predicated upon a desire to have the third parties purchase directly from Aerostar, an aim that clearly served to eliminate the need for the Dealership Agreement between Plaintiff and Aerostar.

Defendants next argue that the tort claim requires the Court to interpret the Dealership Agreement. Defendants rely on the language in the Dealership Agreement to establish that their communication with the third parties in contract with High Plains did not constitute a breach of contract nor a tortious act. Accordingly, to whatever degree the Dealership Agreement must be interpreted, this consideration also weighs in favor of finding that the tort claims fall under the scope of the Dealership Agreement.

Defendants' final contention is that the same operative facts give rise to both the breach of contract and tortious interference claims. While some facts, such as the failure of Defendants to deliver the wind turbines or, in the alternative, return Plaintiff's deposit, are beyond the scope of the tortious interference claims, Defendants' argument is not misguided in that common facts are shared between the claims. The Court, therefore, finds that High Plains' tort claims fall within the Dealership Agreement and are subject to the forum selection clause.

"As a preliminary matter, the venue to which transfer is requested must be one in which the suit could have originally been sought." DataCard Corp. v. Softek, Inc., 645 F. Supp. 2d 722, 732 (D. Minn. 2007). Here, the parties do not dispute that the breach of contract claim could have been properly brought in Massachusetts; therefore, the jurisdiction and venue of Massachusetts is not at issue, and the Court need only weigh the factors to determine if transfer of venue is required.

"In a suit based on diversity of citizenship, federal law determines the validity of a forum selection clause." Zamora Entm't, Inc. v. William Morris Endeavor Entm'ts, 667 F. Supp. 2d 1032, 1037 (S.D. Iowa 2009) (citing Sun World Lines, Ltd. v. March Shipping Corp., 801 F.2d 1066, 1068-69 (8th Cir. 1986)); see also Rainforest Café, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003) (applying federal law to determine "whether th[e] forum selection clause applies" while noting that its governance is still "an open question" in the Eighth Circuit).[5]

District courts are to view forum selection clauses as "prima facie valid" and enforce said clauses "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). A forum selection clause is not unreasonable simply because it would cause inconvenience to a party, unless the inconvenience would effectively deprive the party of its fair day in court. See Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 790 (8th Cir. 2006). Furthermore, a clause may be set aside if it is unjust, unreasonable, or invalid due to fraud or overreaching. See M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citing M/S Bremen, 407 U.S. at 15).

In determining the effect of a forum selection clause, the Eighth Circuit Court of Appeals has differentiated between those clauses that declare a "mandatory" jurisdiction and those that do not. See Dunne v. Libbra, 330 F.3d 1062, 1064 (8th Cir. 2003) (holding that words such as "exclusive," "only," and "must" suggest exclusivity); United Fire & Cas. Co. v. Applied Fin.,

---

[5] The Eighth Circuit Court of Appeals has held that "[b]ecause the enforceability of a forum selection clause concerns both the substantive law of contracts and the procedural law of venue, there is some disagreement among the circuits over whether state or federal law applies, and we have yet to adopt a definitive position on the issue. Nor must we do so here . . . ." Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006) (internal quotation marks and citations omitted). Defendants argue the application of federal law and Plaintiff does not proffer an alternative. In light of the ambiguity in the Eighth Circuit and lack of dispute between the parties, the Court will apply federal law. See Wells Fargo Fin. Leasing, Inc., 756 F. Supp. 2d at 1093 n.5.

14

Inc., 397 F. Supp. 2d 1086, 1095 (N.D. Iowa 2005) (discussing Dunne and finding the forum selection clause "permissive, not mandatory" in the absence of language of exclusivity). "Mandatory forum-selection clauses require a case to be brought in an identified venue based on 'specific language indicating the parties' intent to make jurisdiction exclusive.'" DataCard, 645 F. Supp. 2d at 729 (quoting Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc., 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003)). "Permissive forum-selection clauses, on the other hand, 'constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum.'" Id. (quoting Fla. State Bd. of Admin., 262 F. Supp. 2d at 1009).

The Dealership Agreement contains exclusive language dictating that the agreement "shall be governed by" Massachusetts law and, therefore, is a mandatory choice-of-law clause. Dealership Agreement 5, Ex. A to Defs.' Br., ECF No. 7-1; see Dunne, 330 F.3d at 1064 (finding that the choice-of-law provision stating that the agreement "shall" be construed in accordance with the laws of Illinois "unambiguously mandated] the application of Illinois law for purpose of construing the contract"). In addition to the mandatory choice-of-law clause, the Dealership Agreement provides that "[a]ny dispute arising under or in connection with this agreement or related to any matters which is the subject of this agreement *shall* be subject to the *exclusive* jurisdiction of the state and/or federal courts located in Massachusetts." Dealership Agreement 5, Ex. A to Defs.' Br., ECF No. 7-1 (emphasis added). Here, the inclusion of language such as "shall" and "exclusive" makes clear that the forum selection clause is exclusive, thus creating a mandatory forum selection clause. See Fla. State Bd. of Admin., 262 F. Supp. 2d at 1009 (holding that "mandatory clauses must contain specific language indicating the parties' intent to make jurisdiction exclusive").

When determining the appropriate venue, "courts have determined that a valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the

district court's calculus.'" Terra Int'l, 119 F.3d at 691 (quoting Stewart, 487 U.S. at 29). When, as here, the clause is mandatory, it is given particular weight. See Integrated Molding Concepts, Inc. v. Stopol Auctions L.L.C., Civ. No. 06-5015 (PJS/RLE), 2007 WL 2263927, at *7 (D. Minn. Aug. 6, 2007) ("[A] forum selection clause that is mandatory is given greater weight than a permissive one."). "Where . . . the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain.'" Servewell Plumbing, 439 F.3d at 789 (quoting M/S Bremen, 407 U.S. at 17). Here, there is no dispute between the parties that the Dealership Agreement was reached through an arm's-length negotiation between two sophisticated parties. Accordingly, the burden is on Plaintiff to offer reasoning to avoid the agreement into which it has entered.

Having determined that the clause is mandatory and covers the present claims, the Court must still consider if the clause is invalid or the result of fraud or overreaching. See M/S Bremen, 407 U.S. at 12. Plaintiffs have not argued, nor presented evidence to demonstrate, that the contract was the result of fraud or invalid for any other reason. Instead, High Plains bases its argument on its contention that its claims fall outside the scope of the forum selection clause. As discussed above, the Court is not swayed by this argument; therefore, the mandatory forum selection clause is entitled great weight.

In addition to the deference due to a mandatory forum selection clause, the factors the Court is to consider under § 1404(a) support a transfer of venue. Although, there exists a presumption in favor of a plaintiff's choice of forum, see DataCard, 645 F. Supp. 2d at 732, "such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue," Jumara, 55 F.3d at 880. Additionally, "[t]he convenience of the witnesses is an important factor for the court since it determines the 'relative ease of access to sources of proof.'" Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), superseded by statute, 28 U.S.C. §1404(a)

16

(1982)). In considering this factor, this Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991). However, the Supreme Court has held that, where a prior agreement exists, this consideration is given less deference:

> Whatever 'inconvenience' [plaintiff] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In such circumstances it should be incumbent on the party seeking to escape [its] contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to [its] bargain.

M/S Bremen, 407 U.S. at 17-18. High Plains emphasizes that the third-party witnesses will be heavily inconvenienced if venue is transferred to Massachusetts. This inconvenience, however, does not deprive Plaintiff of its day in court. Id. at 18. In view of the mandatory forum selection clause and the weight to which it is entitled, the factors weigh in favor of granting Defendants' requested transfer of venue.

Finally, the Eighth Circuit Court of Appeals has set forth seven factors for district courts to consider in determining the interests of justice:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

Terra Int'l, 119 F.3d at 696. The first factor supports a transfer of venue as Defendants have filed a related civil action in Massachusetts. While the second factor clearly weighs against transfer, the Court finds that the third, fourth, and fifth factors are in equipoise and do not weigh in favor of either party. Finally, the sixth and seventh factors, in consideration of the fact that Massachusetts law is to be applied, favor Defendants' requested transfer.

The Court weighs the above factors in light of the Supreme Court's holding that "absent some compelling and countervailing reason [a forum selection clause] should be honored by the

17

parties and enforced by the courts." M/S Bremen, 407 U.S. at 12. Accordingly, the forum selection clause will be enforced.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for lack of Personal Jurisdiction and/or Improper Venue or, in the alternative, for Transfer of Venue (ECF No. 7) must be **granted in part and denied in part**. Insofar as Defendants seek dismissal of the case for lack of personal jurisdiction or improper venue, the motion is **denied**. Defendants' request in the alternative for transfer of venue is **granted**. The Clerk of Court is directed to transfer this case to the District of Massachusetts.

**IT IS SO ORDERED.**

Dated this 21st day of December, 2011.

_____
JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT